IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JANE DOE**, <br><br>    Plaintiff, <br><br> v. <br><br> **HOUSING AUTHORITY OF PORTLAND,** a public municipal corporation, d/b/a **HOME FORWARD;** et al., <br><br>    Defendants. | Case No. 3:13-cv-1974-SI <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

Plaintiff Jane Doe is a recipient of the federal Housing Choice Voucher Program (commonly referred to as "Section 8," hereinafter referred to as "Voucher Program"), which is funded by the U.S. Department of Housing and Urban Development ("HUD"). Home Forward administers this program in Multnomah County. This case arises out of a dispute between Home Forward and Plaintiff regarding Home Forward's request to conduct an in-person reinspection of Plaintiff's apartment after she failed an initial inspection to ensure she is maintaining her apartment in compliance with federal standards and Plaintiff's refusal to permit the reinspection. Plaintiff, acting *pro se*, filed suit, alleging that Defendants: (1) violated the Fair Housing

PAGE 1 – OPINION AND ORDER

Amendments Act ("FHAA"),[1] 42 U.S.C. §§ 3601-3619, by failing to accommodate Plaintiff's disability and discriminating against her; (2) violated Section 504 of the Rehabilitation Act ("Section 504"), 42 U.S.C. § 504, by discriminating against her based on her disability and failing to accommodate her; (3) violated Oregon Revised Statutes §§ 659A.145, Oregon's statute precluding discrimination against individuals with a disability in real property transactions; and (4) were negligent. Plaintiff also alleges, but does not assert as a separate claim, that she seeks damages and injunctive relief for Defendants' creation and perpetuation of a hostile living environment, breach of the implied warranty of habitability, and breach of the contractual documents governing her tenancy.[2]

Before the Court are Defendants'[3] motion for summary judgment against all of Plaintiff's claims and for Defendants' declaratory judgment counterclaim (Dkt. 46) and motion to dismiss Plaintiff's declaratory judgment "counterclaim" (Dkt. 52). Also before the Court is Plaintiff's motion to strike some of Defendants' affirmative defenses and motion to make more definite and

---

[1] Under the FHAA, "Congress extended the [Fair Housing Act's] protection to handicapped persons." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994).

[2] The "Introduction" section of Plaintiff's First Amended Complaint also summarily states that Plaintiff seeks damages under the Supremacy Clause, Due Process Clause, Fourth, Fifth, and Fourteenth Amendments, 42 U.S.C. § 1983, 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1), 28 U.S.C. §§ 2201 and 2202, and numerous additional Oregon statutes. Plaintiff offers no factual allegations, claims, or argument relating to these statutes and constitutional provisions. To the extent Plaintiff intended to bring claims under these statutes and provisions, the Court finds that she did not adequately plead such claims and that amendment could not cure the deficiencies in her pleading. Accordingly any such claims are dismissed with prejudice.

[3] In Plaintiff's First Amended Complaint, she names as defendants Home Forward, HUD, Income Property Management, Co., the company that manages Plaintiff's apartment complex, and approximately 42 alleged employees and agents of these entities, in their individual and official capacities, plus 14 Jane and John Does. Only a subset of these defendants appear to have been served or have waived deficiencies of service. These defendants, calling themselves the "Home Forward Defendants," have answered and counterclaimed. Dkt. 32. These defendants are referred to herein simply as "Defendants."

certain other of Defendants' affirmative defenses (Dkt. 45). For the following reasons, Defendants' motions are granted and Plaintiff's motions are denied as moot.

## STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Plaintiff did not file a response to Defendants' motion for summary judgment. In a letter to the Court, Defendants argue that their motion should be granted as unopposed. A court may not, however, grant summary judgment by default. *See Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013). When a party fails to respond to a fact asserted by the movant, a court may:

> (1) give [the party] an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting

PAGE 3 – OPINION AND ORDER

>materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). This rule was amended in 2010 to incorporate the "deemed admitted" practice of many courts—where a party fails to respond to an asserted fact, that fact may be "deemed admitted" (considered as undisputed). *Heinemann*, 731 F.3d at 917. Here, the Court will consider as undisputed the facts asserted by Defendants in their unopposed motion.

Considering a fact as undisputed, however, does not mean that summary judgment automatically may be granted. A court must still determine, considering the facts the court has found undisputed for want of a response, the legal consequences and proper inferences to be drawn from those facts. *Id.* (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). Accordingly, the Court considers Defendants' motion on the merits in light of the undisputed facts.[4]

## B. Declaratory Judgment

"Under the Declaratory Judgment Act, a district court may 'declare the rights and other legal relations of any interested party seeking such declaration.'" *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011) (quoting 28 U.S.C. § 2201(a)). The Declaratory Judgment Act creates a remedy by which parties may seek a declaration of their rights and obligations, but the Declaratory Judgment Act does not confer jurisdiction on a case that otherwise could not be brought in federal court. *See Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011). Additionally, a declaratory judgment action must meet the case-or-controversy requirement of Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). Whether a declaratory judgment action meets Article

---

[4] The Court also considers the exhibits attached to the First Amended Complaint in evaluating the pending motions.

III's case-or-controversy requirement depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.

Here, there is no dispute that the Court has jurisdiction over Plaintiff's substantive claims. The Court exercises its discretionary jurisdiction to consider Defendants' declaratory judgment counterclaim because the facts alleged show that there is a substantial controversy between the parties regarding whether Plaintiff may refuse to allow an in-person inspection of her apartment and whether Defendants offered reasonable alternative accommodations to Plaintiff. The resolution of these issues potentially affect the health and safety of Plaintiff and the other residents in her apartment building and are of sufficient immediacy to warrant the issue of a declaratory judgment.

## BACKGROUND[5]

Plaintiff resides in the Dawson Park apartment complex in the city of Portland in Multnomah County, Oregon. On or about May 30, 2006, Plaintiff moved into her current one bedroom apartment. At the time she moved in, her carpet, linoleum, and blinds were not replaced and her apartment was not painted. Upon moving in, however, Plaintiff signed an Inventory and Condition of Unit checklist detailing the condition of her apartment and did not mark any item as deficient. On March 13, 2012, Plaintiff sent an email to Home Forward and certified that there were no maintenance issues with her apartment, there were no deficiencies in her apartment or

---

[5] As noted above, the facts asserted in Defendants' motion for summary judgment are deemed admitted by Plaintiff's failure to respond. Regarding Defendants' motion to dismiss, the facts asserted by Plaintiff in her First Amended Complaint are not presumed to be true because Defendants' motion to dismiss was brought and is granted on grounds other than failure to state a claim.

PAGE 5 – OPINION AND ORDER

systems that were defective or in disrepair, all essential physical services and landlord-supplied appliances were in working order, and the physical condition of her apartment was in compliance with all statutory and contractual standards. Plaintiff has never failed an inspection for reasons relating to her blinds, carpet, linoleum, or paint.

Because Plaintiff receives Voucher Program benefits, her apartment is subject to annual inspections. Federal law requires that all housing assisted by the Voucher Program must meet certain housing quality standards ("HQS") "both at commencement of assisted occupancy, and throughout the assisted tenancy." 24 C.F.R. § 982.401(a)(3). A public housing authority ("PHA"), such as Home Forward, "must inspect the unit leased to a family prior to the initial term of the lease, at least annually during assisted occupancy, and at other times as needed, to determine if the unit meets the HQS." *Id.* § 982.405(a). In order to be eligible for continued Voucher Program benefits, a tenant "must allow the PHA to inspect the unit at reasonable times and after reasonable notice." *Id.* § 982.551(d). Some Voucher Program benefit recipients qualify for biannual inspections, but Plaintiff did not qualify due to past problems with the condition of her apartment.

These inspections are not only required under federal law, but serve crucial functions in protecting Home Forward's investment in its rental properties and the safety of all tenants. Fire hazards, pest infestations, and illegal drug facilities can threaten the safety and well-being of the tenant being inspected and all other residents of the property.

Plaintiff's 2013 annual inspection was originally scheduled for March 13, 2013. On March 8, 2013, Plaintiff requested as a reasonable accommodation for her disabilities that the inspection be delayed for 55 days and that the inspector not take any photographs. Home Forward granted these requests. Plaintiff's inspection was rescheduled for May 8, 2013. In

requesting this extension, Plaintiff admitted her obligation to allow inspections and acknowledged the potential consequences if she refused to allow an inspection. Plaintiff agreed:

> I acknowledge my obligation to allow [Home Forward] to inspect "at reasonable times and after reasonable notice" (Housing Choice Voucher (HCV) program regulations at 24 CFR 982.551(d). Hypothetically, if I were to presumptively violate this obligation to permit inspection, [Home Forward] could terminate my assistance. (24 CFR 982.552(c)(1).).

Dowden Declaration, Ex. 1. Dkt. 48 at 5.

On May 3, 2013, Plaintiff requested as a further accommodation that her inspection be postponed until May 20, 2013. Home Forward granted this request. On May 20, 2013, Plaintiff requested another extension until May 28, 2013. Home Forward granted this request. Plaintiff requested another extension and Home Forward granted that request, scheduling Plaintiff's inspection for June 19, 2013.

On June 19, 2013, inspector Scott White inspected Plaintiff's apartment. Plaintiff's apartment failed the inspection due to significant paper, magazines, and other clutter in the bedroom. Mr. White noted on the inspection that the clutter was a trip hazard and blocked the required egress from the bedroom window. Mr. White opined that it appeared that Plaintiff had moved clutter from the other rooms in her apartment to her bedroom. Although he did not note this on the inspection report, Mr. White was concerned that the paper debris and other clutter also could create a fire hazard if not corrected.

Mr. White scheduled a reinspection of Plaintiff's apartment for July 17, 2013. On July 15, 2013, Plaintiff requested as an accommodation that her reinspection be delayed until August 8 or 9, 2013. Home Forward granted this request and scheduled Plaintiff's reinspection for August 8, 2013. Because Home Forward had not yet sent a hard copy of its inspection notice to Plaintiff by first class mail, on August 7, 2013, Plaintiff's inspection was rescheduled for

PAGE 7 – OPINION AND ORDER

August 15, 2013. In setting this deadline, Mr. White noted that he was concerned about the safety of Plaintiff's unit and that Home Forward "cannot permit continued housing assistance payments . . . without a passed inspection."

Also on August 7, 2013 (at a few minutes before midnight), Plaintiff requested as an accommodation that she be permitted to take photographs of her apartment and submit those photographs, instead of having a physical inspection of her apartment. Home Forward responded that under federal regulations, Home Forward is required to conduct in-person inspections conducted by a qualified inspector. Home Forward offered Plaintiff an accommodation of postponing her inspection until August 22, 2013, sending out one inspector, sending an inspector other than Mr. White, allowing only the inspector to enter Plaintiff's apartment and not any property management staff, and inspecting only the item that failed the previous inspection, ensuring a brief encounter.

On August 22, 2013, Plaintiff denied consent for the inspection. She informed Home Forward that she had filed discrimination complaints with HUD and the Oregon Bureau of Labor and Industry ("BOLI"). During her tenancy at Dawson Park, Plaintiff had previously permitted inspections and had requested personnel enter her apartment for maintenance and cleaning.

On September 3, 2013, Home Forward notified Plaintiff that her Voucher Program benefits would be terminated effective October 31, 2013, due to Plaintiff's failure to allow the required reinspection of her apartment. The letter also informed Plaintiff of her right to an informal hearing. Plaintiff requested an informal hearing regarding the termination of her benefits and that hearing was scheduled for October 9, 2013.

On October 1, 2013, BOLI declined to accept Plaintiff's discrimination complaint, noting that "[u]nder the Fair Housing Act, extreme infeasible modifications are not mandatory if the

PAGE 8 – OPINION AND ORDER

reasonable accommodation requires a fundamental alteration in the nature of the program or service." BOLI found that Plaintiff's request to conduct her own inspection by photographs "requires a fundamental alteration of the program and Home Forward is not required to grant this request."

Plaintiff's informal hearing on the termination of her Voucher Program benefits was rescheduled from October 9, 2013 to November 6, 2013. On November 6, 2013, Plaintiff filed her action in this Court, staying the informal proceedings.

Throughout Plaintiff's tenancy at Dawson Park, including during the present dispute, no one at Home Forward told Plaintiff that she could not apply to any rental property of her choosing.

## DISCUSSION

### A. Motion to Dismiss

Defendants move to dismiss Plaintiff's counterclaim for declaratory judgment pursuant to Federal Rules of Civil Procedure 7(a), 12(b), and 15(a)(2). Plaintiff had sought leave to file a Second Amended Complaint. After granting Plaintiff three extensions, the Court set a deadline of October 13, 2014, for the filing of Plaintiff's Second Amended Complaint and noted that no further extensions would be allowed. Plaintiff failed timely to file a Second Amended Complaint. On October 20, 2014, the Court entered a scheduling order for the case to move forward on Plaintiff's First Amended Complaint.

On or about November 18, 2014, Plaintiff filed her reply to Defendants' counterclaim for declaratory judgment. Included in Plaintiff's reply was a new "counterclaim" asserted by Plaintiff. This new claim seeks declaratory judgment in at least twelve particulars plus seven forms of preliminary injunctive relief.

PAGE 9 – OPINION AND ORDER

Plaintiff's purported "counterclaim" in her reply to Defendants' counterclaim is not permissible. *See Gonzalez Cent. Elec. Co-op, Inc.*, 2009 WL 3415235, at *5 (D. Or. Oct. 15, 2009) (dismissing a purported counterclaim included in the reply to a counterclaim as impermissible under Federal Rule of Civil Procedure 7(a)); *see also* Fed. R. Civ. P. 7(a). Further, it is not appropriate in the circumstances of this case, in which the Court repeatedly gave Plaintiff the opportunity to file a Second Amended Complaint and Plaintiff failed to meet the court-imposed deadline, after which the Court ordered the case to move forward on Plaintiff's First Amended Complaint. Defendants' motion to dismiss Plaintiff's "counterclaim" for declaratory and injunctive relief is granted.

## B. Motion for Summary Judgment

### 1. Plaintiff's Claims of Discrimination through Failure to Provide Reasonable Accommodation

Plaintiff's first three claims allege that Defendants discriminated against her and violated the FHAA, Section 504, and ORS § 659A.145 by failing to provide Plaintiff with reasonable accommodation. Specifically, Plaintiff alleges that Defendants: (1) failed to permit Plaintiff to take and submit photographs instead of having a physical inspection; (2) refused to allow Plaintiff to apply to other properties; (3) denied Plaintiff's requests for maintenance in her apartment; and (4) refused to engage in the "interactive process" to resolve Plaintiff's accommodation requests.

The analysis under ORS § 659A.145 and Section 504 is substantially equivalent to the analysis under the FHAA. *See Or. Bureau of Labor & Indus. ex rel Mayorga v. Hous. Auth. of Doublas Cnty.*, 2014 WL 5285609, at *6 (D. Or. Oct. 15, 2014); *see also Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1149 (9th Cir. 2003) (relying on the Rehabilitation Act to interpret "accommodation" under the FHAA); *Fishing Rock Owners' Ass'n, Inc. v. Roberts*, 2014 WL

1096246, at *5 n.1 (D. Or. Mar. 18, 2014) (concluding that analysis under the FHAA applies to claims under ORS § 659A.145). Under the FHAA:

> [t]o make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) he [or she] suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.

*Giebeler*, 343 F.3d at 1147.

Defendants stipulate that Plaintiff is a person with a disability and that Defendants knew or should have known about her disability. Defendants also do not deny that they denied Plaintiff's requested accommodation.

### a. Plaintiff's request to use photographs in lieu of a physical inspection

Defendants argue that Plaintiff's requested accommodation to submit her own photographs as her "reinspection" was not necessary to afford Plaintiff an equal opportunity to use and enjoy her apartment. Defendants further argue that granting such an accommodation would violate federal law and would constitute a fundamental alteration of the Voucher Program and its required inspections. Defendants are correct.

Federal regulations require that PHA's (here, Home Forward) inspect properties and that the residents and recipients of Voucher Program benefits must permit such inspections. *See* 24 C.F.R. §§ 982.405(a); 982.551(d). Failure to permit such an inspection may result in termination of benefits. *Id.* § 982.552(c)(1)(i). Plaintiff acknowledged this in her March 8, 2013 email.

Plaintiff's requested accommodation is patently unreasonable because if granted, it would violate federal regulations. *See Williams v. N.Y. City Hous. Auth.*, 879 F. Supp. 2d 328, 338 (E.D.N.Y. 2012) (rejecting as "patently unreasonable" a requested accommodation requiring the

PAGE 11 – OPINION AND ORDER

housing authority to violate its own policies or the federal regulations and Fair Housing Act); *Assenberg v. Anacortes Hous. Auth.*, 2006 WL 1515603, at *5, n.7 (W.D. Wash. May 25, 2006) *aff'd*, 268 F. App'x 643 (9th Cir. 2008) (noting that "the ADA and FHA only [require] 'reasonable' accommodation, and therefore [do] not require entities to violate federal law as an accommodation"). It is also unreasonable because it represents a fundamental alteration to the nature of the program. *See Giebeler*, 343 F.3d at 1157 (noting that "[o]rdinarily an accommodation is reasonable 'when it imposes no 'fundamental alteration in the nature of the program' or 'undue financial or administrative burdens'" quoting *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002)). The nature of the inspection program is for the PHA to conduct in-person inspections. Allowing tenants to conduct their own inspections by taking and submitting photographs of their apartments fundamentally alters that program and potentially endangers the health and safety of the tenant being inspected and the remaining residents of the building. This is particularly true in cases like Plaintiff's, where the tenant subject to the inspection has already failed an inspection.

Further, denying the requested accommodation did not deny Plaintiff the equal opportunity to enjoy the housing of her choice. Requiring a brief inspection by a qualified inspector to reinspect the area of Plaintiff's apartment that failed a previous inspection does not prevent Plaintiff from enjoying her apartment. Although the Court appreciates that an inspection may be stressful for and even upsetting to Plaintiff, that does not rise to the level of denying her the equal opportunity to enjoy her housing. The Court also notes that Plaintiff has permitted such inspections in the past and has requested that persons enter her apartment for maintenance and cleaning. Thus, Plaintiff fails to show that her requested accommodation was necessary. *See Giebeler*, 343 F.3d at 1155 ("To prove that an accommodation is necessary, '[p]laintiffs must

show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.' Put another way, '[w]ithout a causal link between defendants' policy and the plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation.'") (alterations in original) (citations omitted). Summary judgment is granted against this claim.

### b. Plaintiff's ability to apply to rent other properties

Plaintiff alleges that Defendants prevented her from applying to other rental properties. There is no evidence supporting this claim, and the undisputed fact is that none of the Defendants prohibited Plaintiff from applying to any rental property of her choice. Summary judgment is granted against this claim.

### c. The maintenance on Plaintiff's property

Plaintiff alleges that Defendants failed properly to prepare Plaintiff's apartment between February 1, 2006 and May 30, 2006, before she began her tenancy. Plaintiff alleges that this failure has affected her ability to maintain her apartment in a satisfactory condition.

Summary judgment is granted against this claim because: (1) it is untimely; (2) there is no evidence as to how the alleged failure to replace Plaintiff's carpet, blinds, and linoleum have prevented her from maintaining her apartment in a satisfactory condition, particularly when she has never failed an inspection for reasons relating to these items; and (3) Plaintiff has admitted that her apartment was in satisfactory condition when Plaintiff signed the Inventory and Condition of Unit checklist upon moving in and confirmed that her apartment remained in satisfactory condition in her March 13, 2012 email.

### d. Plaintiff's "interactive process" claim

Plaintiff's final claim of discrimination by failure to provide reasonable accommodation is that Defendants failed to engage in the "mandatory" interactive process. It appears that

PAGE 13 – OPINION AND ORDER

Plaintiff is conflating the requirement under the Rehabilitation Act that *employers* engage in an interactive process with *employees* when denying reasonable accommodation requests, *see* 24 C.F.R. § 1630.2(o)(3), with landlord-tenant obligations. There is no similar requirement in the housing and landlord-tenant regulations, and the Court declines to extend the reach of the employer-employee regulations. *See Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 455 (3d Cir. 2002) ("The regulation was promulgated to apply in the employment context, and it is highly doubtful that it was ever contemplated that it would apply in the very different context of housing and land use regulations."); *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1047 (6th Cir. 2001) ("Moreover, while some courts have imposed an obligation on employers and employees to engage in an interactive process, there is no such language in the Fair Housing Act or in the relevant sections of the Department of Housing and Urban Development's implementing regulations that would impose such a duty on landlords and tenants."); *Rodriguez v. Morgan*, 2012 WL 253867, at *8 (C.D. Cal. Jan. 26, 2012) ("[T]his Court would not find that the interactive process is a separate requirement under the FHAA . . . in the housing context, such that a landlord's failure to engage in it gives rise to an independent basis for finding disability discrimination.").

Moreover, even if there were a requirement that Home Forward engage in an interactive process with Plaintiff, Home Forward did so. Home Forward granted numerous extensions for Plaintiff's inspection and reinspection over several months. Home Forward performed an inspection without taking photographs, at Plaintiff's request, and offered the additional accommodation of having the reinspection conducted by a single inspector, other than Mr. White, without the presence of property management personnel. Home Forward responded to Plaintiff's many emails and requests. The fact that Home Forward would not grant Plaintiff

one of her requested accommodations—allowing her to take her own photographic inspection—is not evidence that Home Forward failed adequately to engage in the interactive process with Plaintiff regarding her requested accommodations. Summary judgment is granted against this claim.

### 2. Plaintiff's Negligence Claim

Plaintiff's claim for negligence is essentially that Defendants were negligent in discriminating against Plaintiff. Because the Court has concluded that there is no genuine issue of material fact that Defendants discriminated against Plaintiff as alleged in Plaintiff's First Amended Complaint, summary judgment is granted against Plaintiff's negligence claim.

### 3. Plaintiff's Remaining Allegations

Although not articulated as a separate claim for relief, Plaintiff alleges that she seeks damages for Defendants' (1) discrimination by the creation and perpetuation of a hostile living environment; (2) breach of warranty of habitability; and (3) breach of the contractual documents governing her tenancy. The Court liberally construes the pleadings of *pro se* plaintiffs. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Thus, the Court considers these as claims.

As discussed above, there is no evidence that Plaintiff's apartment is not habitable or that the fact that the carpets, blinds, and linoleum were not replaced before Plaintiff moved in rendered the apartment uninhabitable. Moreover, Plaintiff has declared and confirmed, both in 2006 and in 2012, that there are no problems or deficiencies with her apartment. The Court therefore grants summary judgment against Plaintiff's claims for breach of contract and breach of warranty of habitability.

Plaintiff's claim relating to the hostile living environment appears to be brought under 42 U.S.C. § 3617,[6] based on allegations that Defendants allowed Plaintiff's neighbors to harass and threaten her. There is no allegation or evidence, however, that this alleged harassment was because of Plaintiff's disability or exercise of her rights under the FHAA. Thus, summary judgment is appropriate against Plaintiff's hostile housing environment claim.

### 4. Defendants' Declaratory Judgment Counterclaim

Defendants' move for summary judgment on their counterclaim seeking a declaratory judgment that: (1) Home Forward's denial of Plaintiff's request to provide photographs in lieu of an in-person inspection was reasonable; (2) Home Forward is obligated under federal law to conduct in-person inspections; (3) the accommodations offered by Home Forward regarding the reinspection of Plaintiff's apartment were reasonable alternatives; (4) Home Forward did not violate any legal requirement to engage in the interactive process with Plaintiff; and (5) Home Forward may terminate Plaintiff's Voucher Program benefits immediately upon any future refusal by Plaintiff to allow an in-person inspection of her unit. For the reasons discussed above, the Court grants summary judgment on Defendants' declaratory judgment counterclaim.

Regarding Defendants' fifth requested declaration, that Home Forward may terminate Plaintiff's Voucher Program benefits immediately upon any future refusal by Plaintiff to permit an in-person inspection, the Court limits its declaration to Plaintiff's refusal to permit the reinspection that triggered the filing of this lawsuit. Federal regulations provide that after terminating Voucher Program benefits, a PHA must permit the affected tenant with an opportunity for an informal hearing regarding the legality of the PHA's decision. *See* 24

---

[6] This statute provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

C.F.R. § 982.555(a)(1)(v). In this case, Plaintiff requested the informal hearing but then elected to litigate the matter before this Court. Thus, Plaintiff has had sufficient due process with respect to the current dispute and Plaintiff's Voucher Program benefits may be terminated if she refuses to permit an in-person reinspection. The Court does not, however, opine as to the propriety of any future refusal by Plaintiff to permit an in-person inspection and does not preclude Plaintiff from, in the future, availing herself of the administrative process established in the federal regulations.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. 46) and motion to dismiss Plaintiff's declaratory judgment counterclaim (Dkt. 52) are GRANTED. Plaintiff's motion to strike and motion to make more definite and certain (Dkt. 45) are DENIED AS MOOT. Under the Declaratory Judgment Act, the Court declares as follows: (1) Home Forward is obligated under federal law to conduct in-person inspections and Plaintiff's request to provide photographs in lieu of an in-person reinspection was unreasonable; (2) Home Forward offered Plaintiff reasonable alternative accommodations; (3) Home Forward did not violate any legal requirement to engage in an interactive process with Plaintiff; and (4) Home Forward may terminate Plaintiff's Voucher Program benefits immediately upon Plaintiff's refusal to allow an in-person reinspection of her apartment.

**IT IS SO ORDERED**.

DATED this 23rd day of February, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge